IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UPPER MISSOURI WATERKEEPER,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and SCOTT PRUITT, Administrator, United States Environmental Protection Agency,<br><br>Defendants<br><br>and<br><br>STATE OF MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY, TREASURE STATE RESOURCES ASSOCIATION OF MONTANA, MONTANA LEAGUE OF CITIES AND TOWNS, and NATIONAL ASSOCIATION OF CLEAN WATER AGENCIES,<br><br>Defendant-Intervenors. | CV-16-52-GF-BMM<br><br>**ORDER** |

Plaintiffs Upper Missouri Waterkeeper ("Plaintiffs") moved for summary judgment in this case on June 29, 2018. (Doc. 148.) Defendants United States Environmental Protection Agency ("EPA"), State of Montana Department of

1

Environmental Quality ("DEQ"), Treasure State Resources Association of Montana, Montana League of Cities and Towns, and National Association of Clean Water Agencies (collectively "Defendants") also moved for summary judgment. (Docs. 151, 155, 159, 161, 165.)

The Court issued its Order on the cross-motions for summary judgment on March 25, 2019. (Doc. 177.) The Court granted in part and denied in part Plaintiffs' Motion for Summary Judgment. *Id.* at 35. The Court further granted in part and denied in part Defendants' motions for summary judgment. *Id.* The Court determined that Defendants' adoption of the Current Variance Standard comports with the evidence and finds support in the record. Defendants' adoption of the Current Variance Standard was neither arbitrary and capricious nor an abuse of discretion.

The Court further determined that EPA's regulations contemplate that the highest attainable condition ("HAC") could be attained currently. EPA's regulations contradict themselves by allowing a discharger time to "achieve" the currently attainable condition. The Court determined that Defendants' adoption of a seventeen-year timeline merely to reach the HAC violates the direction of the Clean Water Act ("CWA"). The Court ordered Defendants to set forth a timeline that leads to compliance with Montana's Base Water Quality Standards ("WQS").

The Court deemed it appropriate under the circumstances to seek guidance from the parties regarding the timing and scope of the remedies to address the issues that the Court identified. The Court directed the parties to confer in good faith to reach an agreement as to potential remedies. The Court directed the parties to submit additional briefing if the parties could not reach an agreement.

The parties met and conferred in good faith. The parties failed to reach an agreement as to potential remedies. The parties have filed their supplemental briefs with the Court. (Docs. 180, 181, 182, 183.)

Plaintiffs request that the Court impose a remedy consisting of a time period for dischargers to meet the Current Variance Standard. Plaintiffs further propose a time period for dischargers to meet Montana's Base WQS. Plaintiffs submitted an expert report in connection with their proposal. (Doc. 180-1.) The expert report concludes that currently available technology exists sufficient to meet the HAC. *Id.* at 4. The expert report argues that the HAC can be met in 4-6 years for mechanical plants, and 1-7 years for lagoons. *Id.* at 12-13. Plaintiffs' timeline would require Montana's Base WQS to be met by 2035. (Doc. 180 at 12.)

Defendants argue that the Court should remand the portion of EPA's approval of Montana's variance containing variance timelines to EPA for further action in accordance with this Court's Order. (Doc. 181 at 2.) EPA asserts that the Court should remand without vacatur. *Id.* EPA requests that the Court alternatively

stay the vacatur to enable DEQ and EPA to address the Court's determinations. *Id.* at 3. DEQ requests that the Court partially vacate EPA's approval of the revised general variance, but stay its order of vacatur until EPA approves a replacement general variance consistent with the Court's order. (Doc. 182).

## DISCUSSION

"The general rule is that when an administrative agency has abused its discretion or exceeded its statutory authority a court should remand the matter to the agency for further consideration." *UOP v. United States*, 99 F.3d 344, 350-51 (9th Cir. 1996) (*quoting Abromowitz v. EPA*, 832 F.2d 1071, 1078 (9th Cir. 1987)). The errors that the Court identified relate to actions taken by DEQ and EPA under the agencies' statutory and regulatory discretion to develop water quality standards. The errors identified in the Court's Order consist of legal errors in the agency's adoption of its variance timeline. The Court deems it prudent to remand the case to DEQ and EPA to allow an opportunity for the agencies to revise the variance timeline. The agencies' replacement variance must comport with the Court's Order. (Doc. 177.) The Court determines that the timeframe proposed by Plaintiffs to reach Montana's Base WQS proves reasonable. The Court directs Defendants to set forth a reasonable timeline to reach Montana's Base WQS in the range proposed by Plaintiffs.

The decision of whether to remand with or without vacatur turns on the seriousness of the deficiencies identified. *Allied-Signal v. U.S. Nuclear Regulatory Comm.,* 988 F.2d 146, 150-51 (D.C. Cir. 1993). DEQ proposes that the Court partially vacate EPA's approval of the revised general variance, but stay its order of vacatur until EPA approves a replacement variance. DEQ's proposal proves appropriate. The Court determined that DEQ and EPA's adoption of the Current Variance Standard, and the agency's consideration of "cost" proved reasonable. The error recognized by the Court relates to the 17-year timeline merely to reach the Current Variance Standard.

Partial vacatur related to the 17-year timeline to reach the Current Variance Standard constitutes the appropriate remedy in this case. EPA's approval of the Current Variance Standard for mechanical and lagoon facilities, as well as EPA's approval of DEQ's findings related to widespread economic and social impacts shall not be vacated.

The Court recognizes the reality that dischargers throughout the State of Montana currently stand at different levels of attainment. The parties are nevertheless directed to set forth a reasonable timeline that begins with the relaxed criteria of the Current Variance Standard and leads to compliance with Montana's Base WQS in the time range proposed by Plaintiffs. DEQ shall be given 120 days

to complete the state rulemaking process from the date of this Order. EPA shall be given 90 days to complete its review of DEQ's submission.

## CONCLUSION AND ORDER

The Court deems it appropriate to remand this matter to DEQ with instructions to set forth a timeline that begins with the Current Variance Standard and works towards Montana's Base WQS. DEQ shall be given 120 days from the date of this Order to adopt a timeline in accordance with this Order. EPA shall be given 90 days to complete its review of DEQ's submission.

The variance timeline must serve to allow a discharger to make progress toward achieving Montana's Base WQS within a reasonable time, in the range proposed by Plaintiffs. This Order shall be remanded with partial vacatur of the term of the variance. The vacatur shall be stayed until EPA approves a replacement general variance in accordance with the Court's Order. Defendants' adoption of the Current Variance Standard, and consideration of economic and social impacts shall not be vacated.

DATED this 16th day of July, 2019.

*/s/ Brian Morris*
Brian Morris
United States District Court Judge